IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN FORNESS, JARED KNOCKER,
ESTHER RINKER, DWAYNE SHAW,
KENDRA HORGAN, TERI MOORE, and
LARRY AGNE,

**Plaintiffs,**

v.

CROSS COUNTRY BANK, INC. and
APPLIED CARD SYSTEMS, INC.,

**Defendants.**                           No. 05-CV-417-DRH

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

### I. Introduction

Before the Court is a motion submitted by Plaintiffs John Forness, Jared Knocker, Esther Rinker, Dwayne Shaw, Kendra Horgan, Teri Moore, and Larry Agne (together, "Plaintiffs") to remand this case to state court. (Doc. 16.) Defendants Cross Country Bank and Applied Card Systems (together, "Defendants") respond in opposition. (Doc. 20.) A hearing was held in this matter on January 4, 2006. For the following reasons, the Court denies Plaintiffs' motion.

### II. Background

Plaintiffs are a group of consumers who allege that Defendants "committed a variety of unfair and deceptive trade practices." (Doc. 2, Pls. Compl., ¶ 8.) Defendants are affiliated Delaware corporations engaged in the business of providing credit-card services to individuals. Plaintiffs allege three Counts of wrongdoing against Defendants: the first arises out of the **Illinois Fraud and Deceptive Practices Act**, **815 ILL. COMP. STAT. 505/01 et seq. ("IFDPA")**; the second is for unjust enrichment and restitution; and the third is for breach of the covenant of good faith and fair dealing. (Doc. 2, Pls. Compl., pp. 8-9.)

Plaintiffs' complaint alleges that Defendants engaged in the following improper activities:

> a. Refusing to close accounts upon request by the consumer and/or falsely telling consumers that they may not close their accounts so that Cross Country can continue to charge the consumer's account for membership and other fees;
>
> b. Falsely representing to consumers and to banks that Defendants have authorization to withdraw funds directly from the consumer's bank account, when in fact they have no such authorization;
>
> c. Misleading consumers into believing that if they make a payment, they will not be charged late or other fees and then charging the fees anyway after the consumer agrees to the payment;
>
> d. Failing to disclose to consumers that they will be charged a fee for paying by phone so that in cases where consumers believe they have paid off a balance by doing so, they actually are incurring a new charge; and
>
> e. Charging a variety of fees, including late fees and overlimit fees which bear no relationship to costs and are unlawful penalties.

(Doc. 2, Pls. Compl., ¶ 8.) Plaintiffs focus in particular on the conduct discussed in

(e) — Defendants' alleged practices of charging fees that "bear no relation" to costs. (Doc. 2, Pls. Compl., pp. 8-9.)[1]

Defendants, arguing for removal, rely on statutes and cases holding that if a suit challenges the amount of certain types of bank fees, then the claims in that suit are completely preempted by federal law and removal is therefore appropriate under **28 U.S.C. § 1441**. (Doc. 20, pp. 3-13.) Their argument is that because the claims in Plaintiffs' suit are, at least in part, premised on the relationship between

---

[1] Count I (for violations of the IFDPA) alleges, in pertinent part, as follows:

> Defendants represented in [their] credit card holder agreement various fees such as late fees, overlimit fees, and other fees that are unlawful penalties. . . . *Because there are no costs associated with the transactions* and in light of defendants charging interest in excess of 20%, these are unlawful penalties. . . . The deceptive, unfair practices as well as the suppressed or concealed facts were material.

Count II (for unjust enrichment and restitution) alleges:

> Plaintiffs and members of the Class, in paying late fees, over limit fees, *and other fees that bear no relation to costs*, conferred a benefit upon the defendants in an amount to be determined. . . . Defendant, *in continuing to accept the fees that were significantly in excess of the amount required to cover its actual costs*, appreciated and retained the benefit conferred by plaintiffs.

Count III (for breach of the covenant of good faith and fair dealing) alleges that

> The duty of good faith in the enforcement of the contract required defendant to bill Plaintiffs and the Class members *only that amount that reflected the actual costs of processing payments received after the date due or over limit, etc*. . . . Defendants breached [their] covenant of good faith and fair dealing in the performance of the contract.

(Doc. 2, Pls. Compl., pp. 8-9 (emphasis added).)

Defendants' fees and costs, those claims are usury claims attacking fee amounts. (*Id.*) Plaintiffs, arguing for remand, disagree and claim that Defendants mischaracterize their complaint. In Plaintiffs' view, the claims they bring are "*mainly* based on allegations of deceptive trade practices of defendants which include not disclosing the existence of fees and finance charges, misleading plaintiffs in numerous respects regarding the basis for late fees as well as matters relating to their accounts." (Doc. 17, p. 11 (emphasis added).) In other words, Plaintiffs argue that they primarily challenge Defendants' practices, not the amount of their fees, and as such removal is inappropriate.

### III.  Analysis

#### A.  Removal

A defendant may remove a case only if a federal district court would have original jurisdiction over the action. ***See* 28 U.S.C. § 1441;** ***Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)**.[2] Statutes providing for removal are

---

[2] In pertinent part, **28 U.S.C. § 1441** states:

   (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending . . . .

   (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties . . . .

construed narrowly, and doubts about removal are resolved in favor of remand. ***Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)**. The burden of establishing jurisdiction in the federal courts falls on the party seeking removal. ***Doe v. Allied Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)**.

### B. Federal Question Jurisdiction

Under the well-pleaded complaint rule, federal question jurisdiction exists only when a federal question is presented by a plaintiff's complaint. ***Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)**. If no federal cause of action is affirmatively stated on the face of the complaint, removal on the basis of federal question jurisdiction is improper. ***Id.*** The presence of a federal defense, including preemption, does not provide a basis for removal. ***Id.* at 393**.

Complete preemption, however, is an exception to the well-pleaded complaint rule, and functions as a basis for the removal to federal court of otherwise well-pleaded state-law claims. Complete preemption occurs where Congress intends a federal statute to completely preempt state-law causes of action, such that state-law claims effectively arise under federal law and therefore may be removed to federal court. ***Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7-8 (2003);** ***Caterpillar*, 482 U.S. at 393;** ***Nelson v. Stewart*, 422 F.3d 463, 466-67 (7th Cir. 2005)**. That is, "[w]here a federal statute completely preempts the state-law cause of action, the claim, although pleaded in terms of state law, is in reality based on federal law, and therefore the claim is removable under **28 U.S.C. § 1441(b)**." ***Fedor v. Cingular***

*Wireless Corp.*, 355 F.3d 1069, 1071 (7th Cir. 2004).

### C. Preemption of State-Law Usury Claims

One type of action the Supreme Court has found completely preempted is the state-law usury claim. In *Beneficial v. Anderson*, plaintiffs brought state-law claims for usury violations against a national bank. *Beneficial*, 539 U.S. at 3-5. The defendants sought to remove the case, arguing that the plaintiffs' claims were completely preempted by the **National Bank Act, 12 U.S.C. § 85 ("National Bank Act" or the "Act")**.[3] The Court agreed, finding that the National Bank Act provides the exclusive remedy for usury claims against national banks, even when the complaint itself does not mention federal law. *Beneficial*, 539 U.S. at 10. As it

---

[3] **12 U.S.C. § 85** reads:

Any association may take, receive, reserve, and charge on any loan . . . or other evidence of debt, interest at the rate allowed by the laws of the State . . . where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no more.

Interest, for the purposes of **12 U.S.C. § 85**, includes:

any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes, among other things, the following fees connected with credit extension or availability: numerical periodic rates, late fees, creditor-imposed not sufficient funds (NSF) fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds, overlimit fees, annual fees, cash advance fees, and membership fees.

**12 C.F.R. § 7.4001(a)**.

held, "[u]niform rules limiting the liability of national banks and prescribing exclusive remedies for their overcharges are an integral part of a banking system that need[s] protection from 'possible unfriendly State legislation,'" and therefore the relevant provisions of the National Bank Act "supercede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overages that is exclusive, even when a state complainant, as here, relies entirely on state law." *Id.*

This holding is applicable to the facts of this case through **sections 521(a) and (b) of the Depository Institutions Deregulation and Monetary Control Act of 1980, 12 U.S.C. § 1831d(a)-(b) ("DIDA")**. Those sections allow actions against state-chartered, FDIC-insured banks when such banks charge interest rates higher than the maximum allowable rate of interest.[4] Because of virtually identical

---

[4] In pertinent part, **12 U.S.C. § 1831d(a)** states:

> In order to prevent discrimination against state-chartered insured depository institutions . . . with respect to interest rates . . . such state bank[s] . . . may, notwithstanding any state constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest . . . at the rate allowed by the laws of the state . . . where the bank is located.

**12 U.S.C. § 1831d(b)** states:

> the taking, receiving, reserving, or charging a greater rate of interest than is allowed by subsection (a) of this section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note . . . or other evidence of debt carries with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person who paid it may recover in a civil action commenced in a court of appropriate jurisdiction not later than two years after the date of such payment, an amount equal to twice the amount paid from such State

language in **DIDA** and the **National Bank Act**, and because of Congress's intent to incorporate the language of that Act into **DIDA**, *see* ***Greenwood Trust Co. v. Commonwealth of Massachusetts*, 971 F.2d 818, 826-27 (1st Cir. 1992)** ("The historical record clearly requires a court to read the parallel provisions of **DIDA** and the **Bank Act** *in pari materia*."), courts have held that **sections 521(a) and (b)** should be read together with **12 U.S.C. 85 and 86**. S*ee **In re Community Bank*, 418 F.3d 277, 295 (3rd Cir. 2005)** ("[Section] 521 of DIDA completely preempts any state law attempting to limit the amount of interest and fees a federally insured-state chartered bank can charge."); ***Greenwood Trust*, 971 F.2d 818**; ***Hill v. Chemical Bank*, 799 F. Supp. 948 (D. Minn. 1992) (Alsop, J.)**.

### D. Complete Preemption of Plaintiffs' Claims

The complete-preemption question, therefore, hinges on whether Plaintiffs assert usury claims for excessive fees. Plaintiffs argue that their suit is "mainly" concerned with Defendants' deceptive practices, not the amount of their fees. Defendants, citing to language in the complaint, argue that Plaintiffs do contest fee amounts, and that any argument to the contrary amounts to an effective rewriting of the complaint. (Doc. 20, p. 2.)

The Court agrees that Plaintiffs' complaint challenges the amounts of Defendants' fees. Each of Plaintiffs' three Counts focuses, to some extent, on the relationship between Defendants' fee amounts and the corresponding costs incurred.

---

bank . . . taking, receiving, reserving, or charging such interest.

In Count I, for example, Plaintiffs indicate that "there are no costs associated with [Defendants' fees]," while in Count II Plaintiffs state that Defendants' fees are improper because they "bear no relation to [underlying] costs" and are "significantly in excess of the amount required to cover its actual costs." (Doc. 2, Pls. Compl., ¶¶ 34, 38-39.) Similarly, in Count III Plaintiffs state that Defendants should only have billed Plaintiffs "the amount that reflected the actual costs of processing payments received after the date due or over limit, etc. . . . ." These statements indicate that Plaintiffs do not merely contest the general manner in which Defendants assessed fees, but also the amounts of those fees and, more specifically, the lack of a connection between those amounts and the underlying costs actually incurred by Defendants. Under the logic of **Beneficial v. Anderson**, this invokes the complete-preemption doctrine.

While an argument could be made that Plaintiffs' statements should not be construed as challenging Defendants' fee amounts, but rather as supporting the larger claim that Defendants' web of interrelated charges was improper, Plaintiffs have not effectively made that argument. Instead, they have indicated that they "mainly" challenge Defendants' underlying improper practices. The implication behind this statement, of course, is that they do, in part, challenge the amount of Defendants' fees. Since any substantive fee-amount challenge — no matter the size — raises a question of federal law, Plaintiffs' excessive-fee claims must be resolved by this Court.

Plaintiffs also rely on **Cross-Country Bank v. Klussman**, **2004 U.S.**

**Dist LEXIS 7835, 2004 WL 966289 (N.D. Cal. 2004) (Conti, J.)** as persuasive authority for their argument that this case should be remanded. In that case, a court remanded a similar action because the "gravamen of [that plaintiff's] complaint [was] that [the defendants there] misrepresented the nature and cost of their services, — not that they charged a usurious rate of interest." ***Klussman*, 2004 U.S. Dist. LEXIS at \*21-22**. The facts here are different. In this case, Plaintiffs have made clear — both via repeated references to the relationship between Defendants' fees and costs and through statements that they "mainly" contest the validity of Defendants' practices — that part of the substance of their complaint challenges Defendants' excessive fees. This amounts to a usury claim, and thus invokes complete preemption. Moreover, to the extent ***Klussman***'s plaintiffs challenged fee amounts, they did so only as to fees assessed on an already-improper set of charges. ***Id.*** That is not the case here. Here, Plaintiffs do not contest only the amounts of those fees assessed on top of improper charges; rather, they contest all of Defendants' fees as excessive. Because some of these fees were not assessed on other charges — Defendants' origination fees, for example — Plaintiffs' attack on the amounts of Defendants' fees raises a federal question.

### E. Supplemental Jurisdiction

Federal courts may exercise jurisdiction over state-law claims when the claim is part of "the same case or controversy" as a claim for which independent

federal jurisdiction exists, **28 U.S.C. § 1367(a)**.[5] A state claim is part of the same case or controversy as a federal claim when the claims have a "common nucleus of operative fact," *United Mine Workers of Am. v. Gibbs,* **383 U.S. 715 (1966)**; *see also City of Chicago v. International Coll. of Surgeons*, **522 U.S. 156, 164-65 (1997)**; *Groce v. Eli Lilly & Co.*, **193 F.3d 496, 500 (7th Cir. 1999)**, which exists when "the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *International Coll. of Surgeons*, **522 U.S. at 165 (quoting *Gibbs*, 383 U.S. at 725)**.

Here, weighing the required factors of judicial economy, convenience, fairness, and comity, *see* **Wright v. Associated Insurance Cos., 29 F.3d 1244, 1251 (7th Cir. 1994) (citing *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988))**; *see also International Coll. of Surgeons*, **522 U.S. at 172-73**, the Court retains the balance of Plaintiffs' case. A common nucleus of fact clearly exists, and the four factors above militate against splitting this case into separate state and federal components.

### IV. Conclusion

Therefore, for the above reasons the Court **DENIES** Plaintiffs' motion

---

[5] "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." **28 U.S.C. § 1367(a)**.

to remand. (Doc. 16.) Further, the Court grants Plaintiffs until Monday, February 13, 2006 to file a response to Defendants' motion to compel arbitration. (Doc. 21.).

**IT IS SO ORDERED**.

Signed this 13th day of January, 2006.

/s/          David RHerndon
**United States District Judge**